LAW OFFICE OF
# MARC FERNICH

MARC FERNICH maf@fernichlaw.com                                         800 THIRD AVENUE, FLOOR 20
ALSO ADMITTED IN MASSACHUSETTS                        NEW YORK, NEW YORK 10022
                                                                                                     212-446-2346
                                                                                               FAX: 212-459-2299
                                                                                    www.fernichlaw.com

Dec. 9, 2021

**BY ECF**

Hon. Richard M. Berman
USDJ-SDNY
Daniel Patrick Moynihan US Courthouse
500 Pearl St.
Courtroom 17B
New York, NY 10007-1312

      Re:   *US v. Daidone,* 02 CR 1584 (SDNY) (RMB)

Dear Judge Berman:

Please accept this reply in further support of Louis Daidone's First Step Act motion for reduction of his multiple life sentences to time served – not "immediate release," as the government fancies[1] – based on "a combination of extraordinary and compelling reasons"[2] outlined in our opening papers.

---

[1] *Compare* Mot. at 2 & n.1 *with* Opp. Cover, 1, 15.

[2] *Compare* Mot. 2. *with* Opp. 20-24 (addressing some proffered mitigators singly rather than collectively and insisting that none "alone" suffices or "qualif[ies]").

The government, for its part, concedes that Daidone's advanced age of 75 "places him among the eldest 3% of federal inmates."[3] It agrees the offense conduct is at least 30 years old,[4] dating back a full generation. And it doesn't deny that Daidone's 18 years in lockup[5] have been authoritatively recognized to provide ample deterrence.[6] On the contrary, the government *commends* Daidone's "exemplary [prison] behavior" and family devotion, his "rehabilitation" undisputed.[7] But despite this admitted array of extenuating circumstances, the government opposes relief on a host of grounds that have no merit.

**First**, the government contends that "no legal developments support Daidone's motion."[8] In fact, as the government elsewhere

---

[3] Opp. 21.

[4] *Ibid.* 3-13.

[5] *Ibid.* 1.

[6] *See* Mot. 6-7 & nn. 14-15.

[7] Opp. 1, 23-24.

[8] *Ibid.* 17-19 (cleaned up).

Hon. Richard M. Berman
Dec. 9, 2021
Page 3

allows,[9] the Supreme Court's intervening *Fowler* ruling – issued years after Daidone's conviction became final – tightened the jurisdictional element of witness-tampering murder by requiring "*a reasonable likelihood*" of a relevant federal communication; "remote, outlandish, or simply hypothetical" scenarios no longer suffice.[10]

By the government's own account,[11] Daidone's jury wasn't told of these rigors, as they didn't yet exist. And the government doesn't explain how the prospect of federal communication was anything other than "remote, outlandish, or simply hypothetical" where Bruno Facciolo was concededly killed for suspected *California* cooperation, and he admittedly *declined* an overture to cooperate federally.[12]

**Second**, tacitly acknowledging that *Fowler* "evolved" witness tampering law "in Daidone's favor,"[13] the government falls back on the

---

[9] *Ibid.* 18-19.

[10] *Fowler v. US*, 563 U.S. 668, 677-78 (2011) (emphasis in original).

[11] *See* Opp. 18.

[12] *See ibid.* 8-9, 18.

[13] *Ibid.* 19.

Hon. Richard M. Berman
Dec. 9, 2021
Page 4

truisms that *Booker*[14] – the seminal Supreme Court decision making the Sentencing Guidelines advisory rather than mandatory – doesn't apply retroactively to cases on collateral review,[15] and that nonretroactive intervening changes in sentencing law don't "mandate" extraordinary and compelling circumstance findings.[16]

But Daidone doesn't seek relief under *Booker* or resentencing under a newly advisory Guidelines regime. Much less does he claim that *Booker* "standing alone" – or the advisory Guidelines regime it established – "automatically merit[s]" such relief or resentencing.[17]

---

[14] *US v. Booker*, 543 US 220 (2005).

[15] Opp. 19-20. Though *Booker* is retroactively inapplicable on collateral review, it doesn't necessarily follow that a First Step Act motion under "Section 3582 is not an available avenue to seek a new sentence using the advisory Guidelines." Opp. 19-20 (cleaned up). The sole case cited for that proposition – a nonprecedential summary order – predates both the FSA's passage and *US v. Brooker,* which makes clear that "district courts evaluating motions for compassionate release" may consider "*any* extraordinary and compelling reason for release that a defendant might raise," and that nothing constrains their discretion to "consider whether *any* reasons are extraordinary and compelling." 976 F.3d 228, 230, 236 (CA2 2020) (emphasis supplied). But the Court need not reach this issue for reasons discussed in text.

[16] Opp. 20.

[17] *Ibid*.

Hon. Richard M. Berman
Dec. 9, 2021
Page 5

Instead, Daidone seeks relief in part under *Fowler*: a *retroactive* ruling effecting a *substantive* change in the witness tampering law[18] that otherwise precluded *initial* remand for resentencing under *Booker* and the advisory Guidelines – both in place at the time – on *direct appeal*.[19] With Daidone's position properly understood, the government's digressions read as so much word salad, merely muddying the waters by mixing apples and oranges.[20]

---

[18] *See, e.g.*, *Triestman v. US*, 124 F.3d 361, 367-68 (CA2 1997) (change in substantive, non-constitutional law applies retroactively where defendant convicted under previous law brings initial § 2255 motion, or successive challenge via § 2241, alleging actual innocence in view of intervening change), *abrogation on other grounds recognized in Rosario v. US*, 164 F.2d 729, 732-33 (CA2 1998); *see also, e.g., Rivas v. Fischer*, 687 F.3d 514, 552 (CA2 2012); *House v. Bell*, 547 U.S. 518, 554-55 (2006).

[19] *See US v. Daidone*, 471 F.3d 371, 377 (CA2 2006) ("While many … sentences … imposed under the … Guidelines before … *Booker* … have been remanded to the sentencing court for consideration of resentencing under *US v. Crosby*, 397 F.3d 103 (CA2 2005), such a remand would be improper here. Daidone's conviction on Count Three carried a minimum sentence of life in prison, *see* 18 USC § 1512(a)(3)(A). Thus even after *Booker* the sentencing judge would have no discretion to grant the [d]efendant a lower sentence.").

[20] To the extent *US v. Minaya* (*see* Opp. 20) suggested "changes in the law" *generally* cannot constitute "extraordinary and compelling" circumstances under the FSA, No. 01 CR 619(VM), 2020 WL 5512518, at *3 (SDNY Sept. 14, 2020), it clashes with and doesn't survive the subsequent Second Circuit *Brooker* opinion. *See ante* n.15. That's demonstrated by the government's own citation to *US v. Fuller*, a post-*Brooker* decision where the court *did* consider a nonretroactive change in law – there a change in sentencing law – as part of its "extraordinary and compelling circumstance[]" analysis. No. 09-CR-274-03 (CS), 2020 WL 5849442, at *2 (SDNY Oct. 1, 2020).

Hon. Richard M. Berman
Dec. 9, 2021
Page 6

**Third**, the government spends most of its opposition[21] stressing the uncontested severity[22] of Daidone's offense conduct, implicitly inviting the Court to withhold a reduction on that basis alone. But another racketeering offender in this District, though in more advanced physical decline than Daidone, recently received FSA relief *despite* a jury conviction and life sentence for a slew of violent crimes – embracing at least two brutal murders – committed as head of a vicious Bronx street gang.[23] So, contrary to the government's insinuation, nothing categorically disqualifies even violent offenders from obtaining compassionate release.

**Fourth**, and again contrary to government misconception, Daidone does not claim the decedents were killed "out of passion" or diminish their lives' value "because of their criminal past."[24] Rather, because the offense

---

[21] Opp., *e.g.*, 1-13, 20-21, 23-25.

[22] *See* Mot. 7.

[23] *See US v. Ramirez*, No. 98 Cr. 438 (PGG) (SDA), 2021 WL 4150891 (SDNY Sept. 13, 2021).

[24] Opp. 22.

Hon. Richard M. Berman
Dec. 9, 2021
Page 7

conduct, as alleged, occurred in the specific context of organized crime[25] and Daidone is undisputedly rehabilitated,[26] he poses no recidivation risk, obviating any need for further incapacitation.

**Fifth**, the government oddly asserts that Daidone is somehow unworthy of relief because of its own delay in prosecuting him.[27] But the government does not explain how or why the delay was attributable to Daidone. And nothing in the government's papers suggests it was. If the government had the evidence to charge and convict Daidone, it presumably would have indicted him much sooner, alongside putative confederates Frank Lastorino and Richard Pagliaruolo.

**Sixth**, speaking of Lastorino, the government says he's differently situated than Daidone because he accepted a plea agreement instead of

---

[25] *See* Mot. 7 & n.17.

[26] Opp. 23-24. Again, Daidone seeks relief based on a "combination" of "extraordinary and compelling factors" (Mot. 6) – not due to "rehabilitation alone," as the government (Opp. 23-24) supposes.

[27] *See* Opp. 1, 21-22.

Hon. Richard M. Berman
Dec. 9, 2021
Page 8

going to trial.[28] To Daidone's knowledge, however, the government never extended him a plea offer.

**Seventh** and finally, the government nods at Daidone's age (75), infirmity and length of time served (18 years) but says he isn't sick enough to meet the criteria in USSG § 1B1.13.[29] But as even the government recognizes in its next breath,[30] "the First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release. Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion."[31]

Thus, regardless of whether they count under the Guidelines as serious or life-threatening deteriorations or ailments substantially

---

[28] *Ibid.* 22.

[29] *Ibid.* 21-23.

[30] *Ibid.* 21, 23.

[31] *Brooker*, 976 F.3d at 237.

Hon. Richard M. Berman
Dec. 9, 2021
Page 9

inhibiting self-care in prison[32] – and regardless of whether his conditions are momentarily stable[33] – there is no dispute that

> Daidone's health and mobility are declining with age, evidenced by surgeries to implant a pacemaker (Mar. 2021; *see* Ex. D) and replace a knee.[] The open-heart surgery addressed an atrial fibrillation, described in Ex. D as "persistent," "Urgent" and subject to potential recurrence. And while successfully replaced, the knee has permanently limited flexibility, reportedly due to lack of therapeutic care at his prison facility. In addition, Daidone suffers from severe sciatica that's also required hospitalization and morphine injections, has left him bedridden at times and currently consigns him to a walker.[34]

For the reasons detailed in our opening papers and amplified here, Daidone's FSA motion has merit and should be granted.

Respectfully,

Marc Fernich

cc:   Government Counsel (ECF/email)

---

[32] *See* Opp. 21, 23.

[33] *See ibid.* 22-23.

[34] Mot. 9.