**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

UNITED STATES OF AMERICA,

-against-

LOUIS DAIDONE,
                         Defendant.

---

02 Cr. 1584 (RMB)

**DECISION & ORDER**

     The Court having reviewed, among other things: (i) Defendant Louis Daidone's (second) *pro se* motion for compassionate release from incarceration, dated April 13, 2025, based upon his life sentence; his medical condition; his age; his having served a portion of his sentence; and his rehabilitation while in prison, *see* Def.'s Mot., dated Apr. 13, 2025, at 3–4 (ECF No. 93); and (ii) the Government's opposition to any sentencing reduction, dated May 23, 2025, because Defendant's arguments do not rise to the level of "extraordinary and compelling reasons" and because the 18 U.S.C. § 3553(a) factors outweigh any sentence reduction, *see* Gov't Mem., dated May 23, 2025, at 18, 21 (ECF No. 94); **the Court denies Defendant's motion (ECF No. 93).**[1]

## I. BACKGROUND

     Defendant, "a high-ranking member of the Luchese Crime Family, rising as high as Acting Boss," is 79 years of age and is currently serving three life imprisonment terms plus two terms of 20 years imprisonment for his convictions of (i) witness tampering by murder, in violation of 18 U.S.C. §§ 1512(a)(1)-(2); (ii) racketeering, in violation of 18 U.S.C. § 1962(c);

---

[1] Defendant's first motion for compassionate release, dated October 14, 2021 (which was substantially similar to Defendant's instant motion) was denied on February 14, 2022. *See United States v. Daidone*, 2022 WL 443778, at *3 (S.D.N.Y. Feb. 14, 2022) ("Daidone's release would not reflect the seriousness of his offenses, provide just punishment, promote respect for the law, afford adequate deterrence, or protect the public.").

1

(iii) racketeering conspiracy, in violation of 18 U.S.C. § 1962(d); and (iv) conspiring to extend extortionate credit and collecting extensions of credit by extortionate means (murder), in violation of 18 U.S.C. §§ 892 and 894. *See* Gov't Mem. at 18; Presentence Investigation Report ("PSR"), dated May 25, 2004, at 1; Sent'g Tr., dated June 29, 2004, at 13, 14.

Defendant's Guidelines Range was life imprisonment based upon a total offense level of 43 and a criminal history category of III. *See* Sent'g Tr., at 13. **Daidone's conviction for witness tampering by murder alone had a mandatory minimum sentence of life imprisonment.** *See id.* at 9.

## II. LEGAL STANDARD

The applicant for compassionate release "bears the burden of proving that 'extraordinary and compelling reasons' exist and that he is entitled to the relief he seeks." *United States v. Givens*, 2020 WL 4699042, at *2 (S.D.N.Y. Aug. 13, 2020). And, even if a defendant were able to "clear[] the high bar set by § 3582(c)(1)(A)(i)" by showing extraordinary and compelling circumstances, *United States v. Perez*, 451 F. Supp. 288, 293 (S.D.N.Y. Apr. 1, 2020), "the [d]istrict [c]ourt's reasonable evaluation of the Section 3553(a) factors is an alternative and independent basis for denial of compassionate release." *United States v. Robinson*, 848 F. App'x 477, 478 (2d Cir. 2021) (per curiam).

## III. ANALYSIS

### 1. No Extraordinary and Compelling Reasons

The Government contends persuasively that the factors Defendant relies upon do not singly or collectively constitute extraordinary and compelling reasons. *See* Gov't Mem. at 18.

Defendant is serving three concurrent life sentences for "racketeering involving murder, racketeering conspiracy involving murder, and witness tampering by murder." *Id.* And, Defendant's conviction for witness tampering by murder includes a mandatory minimum

2

sentence of life imprisonment. *See* Sent'g Tr. at 9. Life sentences are routinely imposed by courts in the Southern District of New York for intentional murders such as those committed by Defendant. *See, e.g.*, Judgment at 3, *United States v. Matthew Madonna*, No. 17 Cr. 89 (S.D.N.Y. July 27, 2020) (a former Acting Boss of the Luchese family was convicted of murder and racketeering charges and sentenced to life in prison).

Defendant's age alone does not qualify him for compassionate release. Under Section 1B1.13(a)(1)(B), a Court may grant compassionate release if the defendant "is at least 70 years old . . . and has served at least 30 years in prison . . . ." U.S.S.G. § 1B1.13(a)(1)(B). Defendant is 79 years old and he has served 22 years in prison. *See* Def.'s Mot. at 3. He is 8 years short of the 30-year threshold. *See id.*

Similarly, Defendant's medical conditions are not extraordinary and compelling circumstances. Under U.S.S.G. § 1B1.13, extraordinary and compelling reasons exist if "[t]he defendant is . . . suffering from a serious physical or medical condition[] . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13(b)(1)(B). Among other things, Defendant has not shown that the care he requires "is not being provided [by the prison] . . . ." U.S.S.G. § 1B1.13(b)(1)(C).

Defendant argues that his "incarceration for the entirety of the COVID-19 Pandemic" is sufficient for compassionate release. But Defendant has not established an extraordinary and compelling reason for relief. "[C]onditions of confinement caused by the pandemic . . . do not constitute extraordinary or compelling reasons for a sentence reduction." *United States v. LaBarca*, 2022 WL 203166, at *6 (S.D.N.Y. Jan. 24, 2022); *see also United States v. Farmer*, 2022 WL 47517, at *3 (S.D.N.Y. Jan. 5, 2022).

Defendant contends (unpersuasively) that his surgery to insert "a pacemaker" and his "use[] [of] a walker" following his "knee surgery replacement" are evidence that he "can no longer take care of himself within the prison environment." Def.'s Mot. at 9–10; Ex. 9. Among other things, BOP records show that Defendant is receiving treatment for his medical issues. Defendant is ambulatory with his walker and was issued a "[s]pecial orthopedic knee brace," and "[m]edical [s]hoes" with "inserts made by orthodics" to address occasional "pain in knee and back." Def. Med. Recs. 2024-2025, at 18, 55. Defendant has appropriate living accommodations and receives medication to treat knee pain. *See id.* at 30, 55.

Defendant's other medical issues (e.g., Atrial fibrillation, hypertension, and spinal stenosis) are not terminal and do not meet the requirements of Section 1B1.13. Defendant is prescribed Apixaban and Metoprolol Tartrate to treat atrial fibrillation, hydrochlorothiazide for hypertension, and Acetaminophen for spinal stenosis. *See id.* at 30.

### 2. 18 U.S.C. § 3553(a) Factors Weigh Heavily Against a Sentence Reduction

Even if Defendant were able to show extraordinary and compelling reasons for compassionate release – which he has not done – the § 3553(a) factors do not support a sentence reduction. *See* Gov't Mem. at 21–22. The district court may deny a defendant's motion for compassionate release where, as here, the extreme severity and criminality of Defendant's unlawful behavior overwhelms any sentence reduction. *United States v. Rodriguez*, 147 F.4th 217, 223 (2d Cir. 2025); *see also United States v. Keitt*, 21 F.4th 67, 69 (2d Cir. 2021). Among other factors, Defendant's crimes included two premeditated murders of victims who were suspected by Defendant and his co-conspirators of cooperating with law enforcement. *See* Gov't Mem. at 3, 22.

The § 3553(a) factors overwhelmingly undercut Defendant's motion. And, the Defendant's sentence accurately reflects the seriousness of the offense, promotes respect for the

4

law, provides just punishment, affords adequate deterrence, and protects the public from further crimes of the Defendant. *See* 18 U.S.C. § 3553(a)(2)(A)–(C). *See United States v. Halvon*, 26 F.4th 566, 570 (2d Cir. 2022).

As noted above, Defendant is responsible for two brutal murders. *See* Gov't Mem. at 3. "Both of . . . [Defendant's] murder victims were killed because of suspicion that they were cooperating with, or were about to cooperate with, law enforcement, making those killings particularly heinous." *Id.* at 22. **Defendant "tackled [a victim] . . . and dragged him back to the garage . . . [and] held [him]" while Defendant's accomplices "stabbed [the victim] in the back repeatedly" before shooting the victim in the head.** PSR ¶ 24 (emphasis added); *see United States v. Datello*, 2020 WL 4505678, at *1 (S.D.N.Y. Aug. 4, 2020).

Defendant also conducted a long-running lucrative loansharking operation. "[F]ailure to repay a loan resulted in the threat of violence or actual violence." *Daidone v. United States*, 2009 WL 2611943, at *7 n.10 (S.D.N.Y. Aug. 24, 2009). After being convicted of a bank robbery conspiracy in 1992, Defendant resumed loansharking activities "while on supervised release . . . ." Gov't Mem. at 15. Courts routinely deny compassionate release to violent and repeat offenders with heinous criminal histories. *See, e.g.*, *United States v. Bolino*, 2020 WL 4749807, at *6 (E.D.N.Y. Aug. 17, 2020), *aff'd*, 2021 WL 3871262 (2d Cir. Aug. 31, 2021) (**"[R]educ[ing] defendant's sentence would . . . diminish[] his transgressions and undermin[e] the goals of . . . [his] sentence, . . . [i.e.] the need to dispense adequate punishment . . . and to deter others from emulating [Defendant's] behavior."**) (emphasis added).

The Defendant's behavior resulted in mandatory life sentence(s) to protect the public from further crimes of "murder, intimidation, violence, and threats of physical and economic harm." PSR at 6; *see* 18 U.S.C. § 3553(a)(2)(C).

While the Court commends Defendant's apparent lawful behavior while in prison, including coursework he completed and letters of support from his family, *see* Def.'s Mot. Ex. C, Ex. E, the Government does not agree that Defendant "is no longer a threat to public safety," Gov't Mem. at 36. Unfortunately, there is the danger that "he can command others to [commit acts of violence]." *United States v. Gotti*, 433 F. Supp. 3d 613, 620 (S.D.N.Y. 2020). In short, the Court does not remotely find sufficient grounds to a reduce Defendant's sentence. *See United States v. LoCascio*, 2020 WL 12719849, at *5–6 (E.D.N.Y. July 17, 2020). Defendant's life sentences reflect the deadly seriousness of his offenses. Defendant's life sentences provide just punishment, including a mandatory life sentence, promote respect for the law, afford adequate deterrence, and protect the public. *See* 18 U.S.C. § 3553(a).

## IV. CONCLUSION & ORDER

For the reasons stated above, and based upon the record, Defendant's motion for a sentence reduction (ECF No. 93) is respectfully denied. The Court directs the Clerk's Office to mail a copy of this Decision & Order to the Defendant.

Date: October 21, 2025
New York, New York

*RMB*
**RICHARD M. BERMAN, U.S.D.J.**